Good morning, Your Honor. Attorney Rafael González-Valente, in representation of Instituto Medico del Norte, the appellant in this case. As a preliminary matter, if the Court would allow, I would like to reserve three minutes of my argument for rebuttal. Okay, you may. Any of you could get the microphone a little closer to you so we can hear you better? There? Yes. You may proceed. Thank you, Your Honor. Let me know when— Oh, go ahead. Okay. Your Honors, good morning. This case deals with the conflicting interpretations of the language contained in a stipulation which established the amortization of a credit of a loan that was issued originally by Ponce Bank, which later converted into Oriental Bank and Trust, which is the predecessor in interest to Greengift Capital, the appellee. Let me ask you, the conflicting language comes from the 2013 proposed workout plan, correct? Well, the conflicting interpretations, the language is there, is based on the workout plan proposal. Okay, but that workout plan proposal, when the bankruptcy court approved the reorganization plan, it did not include that language? No, that was an internal document issued by Oriental in— So that's between the parties? It wasn't even in between the parties. That was an internal document for Oriental. We have been discussing the stipulation for the treatment. That document, it's—from the party's perspective, and tell me if I'm wrong, that proposed agreement is not binding on the court. That's basically—it's not binding on the parties. What's binding on the parties should be the plan approved by the bankruptcy court. That's controlling. Am I correct? Yes, Your Honor, and the stipulation between the parties, which is incorporated by reference in the plan. So I think that's kind of a tricky thing, right? What does it say there? The stipulation—the plan says the stipulation is incorporated into the plan. And dominates. And what? And that it would be—if there is any conflict, it would be the stipulation that would predominate. But why weren't the terms of the stipulation, like the language itself, incorporated in the language of the plan? Well, Your Honor, to be honest, we thought that incorporating by reference was enough. We—it's a stipulation that was presented to the court and was already approved by the court. So it's not—this is not a stipulation that was not—that was a private document that was not available in the docket or part of the case. But it's not even referenced by the bankruptcy court. Wouldn't it have been more proper if one of the parties or both parties asked the bankruptcy court, Judge, can you amend the plan approved to include that? But that wasn't done either, correct? No, it was, Your Honor. And I reference you to page of the addendum, 28 of the addendum, which is the treatment of the plan for Oriental. It specifically states—actually, it's underlined and everything, Your Honor. It states that the stipulation would be incorporated into the plan. And I quote, the settlement agreement was reached with Oriental as to the manner in which the creditor will be paid. The settlement was approved by this honorable court and its terms and conditions are made part of this treatment of this creditor under the plan. I know that the district court did not—obviously, did not see that and ruled that the stipulation was not included, but that was a mistake on the district court's part, respectfully. Your Honor. So the language made part of is your understanding of made part of references what you're saying is incorporated? Are you saying that those are coterminous? I'm sorry. I didn't understand the question, Your Honor. It doesn't specifically say incorporated by reference, does it? It says made part of. And the question is, are you saying that those are identical legal terms? Yes, Your Honor. Actually, I believe that if it's made part of the plan, it's even more binding. It's not by reference. It's incorporated into the plan specifically. Let's turn to the bankruptcy court's decision, which I think you might agree is a little bit confusing. You say that the bankruptcy court considered Greengift's motion under the 12B6 standard.  But the bankruptcy court said it was, quote, moved to consider the matter through a motion for summary judgment. We filed a motion requesting that it was considered as a motion for summary judgment, but it was never granted. Right. You had moved the court to convert Greengift's motion to dismiss to one of summary judgment. What is your best argument that the court didn't convert the motion to dismiss? Well, Your Honor, the binding precedent of this court states that for a motion to dismiss to be converted to a motion under Rule 56, the court has to enter a specific order and notify all the parties that the motion to dismiss is being converted to a Rule 56 motion, something that was not done. The court, although we requested that it be converted, Greengift, in that time it was Condado 7, opposed it, and the court never moved either way. It didn't deny or grant. So there's no specific order converting the motion to dismiss to a Rule 56. And I'll give you, if you'll give me just one second, I'll give you the quote from this court regarding that.  That's okay. I'm familiar with that. But let's say I disagree with you, or at least that for whatever reason I think the bankruptcy court did convert the motion to dismiss to one of summary judgment. Yeah. Why doesn't, so let's assume that, why doesn't Greengift win under the summary judgment standard? Well, Your Honor, first of all, Greengift didn't file any evidence in support of its allegations. We were the ones that moved to the court, and we provided the court. So you would say there's no material facts in dispute? There's no dispute. Actually, we submitted a supplemental statement of facts, and Greengift never opposed it, which under Rule 56 and Rule 56E should have made the court accept them as true, and given those statement of facts as undisputed, something it obviously did not do. I'm not sure you understand. In, I think it was February of 2022, we filed a supplemental motion for summary judgment. We included a supplemental statement of facts. We also opposed Greengift's statement of facts in that document, but we also submitted a supplemental statement of facts. Even though Greengift filed its supplement a week later, it did not oppose or contravene or respond to the supplemental statement of facts. Your Honor, I think that would answer your question as to why they should not prevail in a Rule 56 motion. No, I understand. I know Your Honors have... Let me ask you this. Okay. Do you think the stipulation, for lack of a better word, is ambiguous or unambiguous? Your Honor, I participated in the negotiating that stipulation, and I think it was clear, and Oriental thought it was clear. Obviously, it was not as clear as we thought it was, but as we state in our briefs, not only do we think that the evidence that we proposed is sufficient to make it clear that the 99 agreements, that the amortization of the 99 agreements was included... Let's talk about... Tell me the three best pieces of evidence you argued to the district court supported that amortization as agreed to in 91 was included. Well, Your Honor, obviously, the language of the stipulation, the interpretation that the bankruptcy court and the district court provided to the stipulation would make any reference to the amortization in the 99 agreements a moot point. You know, it would be dead letter under their interpretations because their interpretation is that the credit was restructured completely and there's nothing to reference in an amortization to the 99 agreements. So if you look at the stipulation and take that wording, it must include a non-interest bearing portion. In addition to that, we directed the court to where the note with a non-interest bearing portion was in the 1991 agreements. I believe it's in... Okay, here it is. I'm sorry. The note is in... I'm sorry, Your Honor. Appendix 792. In addition, Oriental's acts concurrent with the approval of the stipulation, which is the workout plan proposal, specifically states that the amortization would include a non-interest bearing note. Counsel, am I correct from the record? I believe the initial disclosure documents from 2019 show that Oriental, who's the predecessor, was not charging the interest. Yes. That's what I was going to respond to, Judge Moncalvo, was that the actions... I'll point out where I'm looking at. It's addendum page 40. It's a document from 10-31-2019. I'm sorry, again? It's addendum page 40, for example, from 10-31-2019. But it shows, again, interest accrual 0.000, daily accrual 0.0. Yes. And that was a document produced in 2019, five years, four years after the approval of the plan and the disclosure statement. When did GreenGift come in? What year? Well, it was first Condado 7, and then Condado 7 transferred to GreenGift. But Condado 7 came in at 2019, and then GreenGift, I think it was in 2020. Did Condado 7 charge interest or didn't charge interest either? We don't know. We have never been able to do any discovery to see what they were doing or what their documents show. That's one of the errors we have raised, Your Honor. We have been fighting this... Okay, but at least on the record, there's evidence that at least when Oriental, and again, the original one was Oriental, am I correct? Yes. Okay, but Oriental was never charging for that. Yes. That's what I was saying to Judge Montecalvo. The workup plan proposal, which was drafted by Oriental when the stipulation was signed, specifically states that the payment plan, this is in page, I think, 28 of the addendum, the second page of the workup plan proposal at the bottom, it says payment plan proposed, and it says specifically that it includes a $3.585 million non-interest bearing note due with a maturity date five years from the confirmation of the plan. In addition to that, then we also provided the court with the statement of accounts produced by Oriental in 2019, which show that the credit was divided into two portions, one interest bearing and one non-interest bearing, as the judge stated is in pages 38 to 40, I think, in the addendum. Let me ask you one last question, and then you're going to have rebuttal time. Yes. Have you and opposing counsel appeared before settlement counsel, or that hasn't happened in this case? No, yes, we did. You did? We appeared in the settlement conference just as soon as the appeal was filed. Okay. Thank you. Sadly, we didn't reach an agreement, obviously. Thank you, Your Honors. Never too late to reach one. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning, everyone. This is Counsel Ramon L. Ramos-Aponte for the Appellee Green Gift Capital, LLC. Although the combined appendix of these appeals nearly totals 3,000 pages, the case is not complex. Affirming or reversing what was decided by the lower court's rulings depends only on four documents. That is the proof of claim that Oriental Bank filed during the bankruptcy, which is P.C. 53, the joint amendment to the proposed plan, the plan that was finally confirmed on July 26, 2015. And, yeah, it is a good idea to take a look also to the amendment and restated loan agreement of 1992. And most importantly above all is the word amortization, what amortization means. Okay. Let's assume that amortization means exactly what you say it means in your briefs. But the question I have, which I ask opposing counsel is up to probably 2019, Oriental was not charging any interest. So does that have any bearing or that should totally be ignored? Oh, yeah, that should be ignored because their accounting process has nothing to do with what was agreed in the plan. So then shouldn't at least some discovery or limited discovery be warranted to know what exactly was going on? Well, first, it was unnecessary because the debtor has that material and they put it on the record. And secondly, because it's inconsequential because the plan established what the debtor was supposed to do with the debt. So even if Oriental never charged interest, the successors can then charge whatever interest? No, that's not the case. The matter is that in 1991, the debtor has a debt total balance amounting of close to $14 million. And the lender at the time decided to reduce the principal to $10 million. And they decided to put all accrued interest at the time and forbear them in a note of $3 million that was not going to accrue any interest. And that was the agreement. There's no controversy regarding that. And they structured an amortization for the only part of the total debt that could be the object for an amortization, which was debt. The other note, because it was non-bearing interest, it doesn't have any amortization. And what the debtor wants to do is to change the meaning of the word amortization. Excuse me, Mr. Thompson is asking a question. You're saying that amortization didn't apply to the non-interest bearing portion. Was there a separate agreement as to how that was supposed to be paid? Because it had a mature date. According to their previous relationship in the loan agreement of 1991, that amount that was separated would be due on July of 2015. So that's why this is not bearing any interest. So at that time, the total debt was subject to an amortization that was probably like 20 years. But that was the structure. The structure is that it is a balloon loan, so it is going to mature at five years. And at that time, the other note would become due, and that would be the amount that is going to be due. And at this point, the debtor at the time, the borrower, would need to find refinancing of that debt or pay it in full. That was what was going on at the time. But when they went to bankruptcy, Oriental Bank lumped, because everything was due, they lumped together the whole amount that was due at the time, which was close to $8 million, and they decided to put an amortization to that in a payment structure, meaning that in five years, after the several kinds of payments, everything will be due again precisely as it was in 1991, that they will need to refinance that. But the amortization means when you amortize a loan, the loan may be amortized for 30 years, for example, or for 19, 25 years, like it was in the plan. And that is relevant to how payments are made and distributed to principal and interest. But the structure is different. The structure means that even though this is the amortization, the loan will mature in five years. And that's what the parties agreed in the stipulation and what the plan says. That's why the appealant, their argument does not have any merits. Can I just add one other question? You said a few minutes ago that what Oriental internally did was an accounting issue not relevant to the proceedings. I guess if Oriental was under a different impression than you're arguing today in court, as to its understanding of the payments, you're still saying that that has no relevance to our understanding of the parties' understanding? What I tried to mean was that banking accounting has some rules, and they may treat in their books debts in some way that is different from what it is being agreed in a workout or in a bankruptcy plan. So if they were, like, putting the money in one basket or another basket for their accounting purposes, regulatory matters, whatever, it doesn't have to do with what the parties agreed, which was to make— Okay, but then shouldn't at least some, as I mentioned earlier, limited discovery be considered? Because what if somebody is deposed or there's a document that says, yes, we never seen that document, but it could come out saying, yes, it's going to be not interest-bearing, and that's why we're treating it this way. And somebody could explain. Again, somebody else could explain, yes, we're treating it this way for tax purposes or for X, Y, or Z, but we don't know, so we're left in the bubbles. Yeah, but the thing is that the plan never said—it says amortization like it was in 1991, but it never said structure as in 1999, like saying, okay, you have an allowed claim of $8 million because it's what the plan started with. Oriental Bank filed that. It was not objected. So this is the amount that is due at the time that they are negotiating this plan. And they say, okay, this is what I owe you. And they didn't agree to, okay, of that $8 million, let's carve out $3 million again, and that is not going to be bearing any interest. So all of my payments are going to go to the part that previously was interest-bearing note. But as the district court says, that is a leap too wide because it was not—the plan is very explicit in how it is going to be paid, and no mention of carving out any amount is made. Judge Montego had a question. Sorry to interrupt. I'm wondering what your position is as to what the bankruptcy court did. Did it grant your motion to dismiss, or did it convert your motion to dismiss to a motion for summary judgment and grant you summary judgment? As the case law in this circuit is, the trial court does not need to use magic words in order to explain what it's doing. The outcome is what matters. And what happened here is that the court decided—the court is allowed to, you know, revise its own dockets. So this has been his case in, you know, probably like 30 years, Judge LeMond. And he certainly treated the process as a motion for summary judgment, but there was no factual controversy that was material, and the plan was not ambiguous. So applying the law, the bankruptcy court was right in dismissing the case, notwithstanding the fact that he didn't say, you know, the label does not matter, you know. Well, the labels do matter. The labels do matter. And what happened, not the grounds, nor the—and they were not prejudice by the way the bankruptcy court did. I understood Instituto to argue that you didn't really dispute or respond to the motion for summary judgment with like disputing material facts. How do you respond to what Instituto said? Well, if the facts that they were proposing were inconsequential or unmaterial, it doesn't change that what the bankruptcy court decided, that this was—the bankruptcy plan is a contract. And it's clear to me that what was agreed there, so I don't need to see any other evidence. You don't think the stipulated terms are ambiguous at all? You think amortization as agreed to in 91 is crystal clear? Yes, because in 1991, they have an amortization in there which is quite similar to what they did in the plan. Because as you see, they would—we have five years to pay what was at the time the upstanding debt. It's the same interest rate. What documents are you referencing? I'm talking about the loan—the amended loan agreement in 1991, which when they say amortization as in 1991, they are referring to that document. And that document had a section, I think it's 2.5, which spells how the debt is going to be amortized. The debt was separated, as they say, 10 millions. That portion is the one that was going to be subject to amortization. And they scheduled several payments at five years. The last year is exactly the amount that they agreed to in the plan, which is $75,000 a month. So that is what they mean by amortization in 1991. And then the structure was a balloon payment of that amount and the other one that was separated at that time. But when the plan—when the bankruptcy started, Oriental Bank filed a proof of claim for the whole debt at the time. Well, I'll just follow up. It's still not clear to me what your answer to Judge Montecalvo's question is about whether you agree the court converted your motion to dismiss to a motion for summary judgment. Notwithstanding the procedural rules, is that your understanding of what the court did? Yes, I agree with that. You would agree it was converted? Yeah, that it was converted. Yeah. Without notice. Well, you need to have, like, contrastive notice. And, you know, the appellant was the one who asked for the court to treat the controversy as a motion for summary judgment. They filed numerous documents, made legal arguments. The reason it matters, counsel, the reason it matters is because if the court disagreed with their motion for summary judgment, then the court would have denied it and would have considered your motion to dismiss on motion to dismiss standards. But in converting your motion to a summary judgment motion, something altogether happened there. Oh, should I answer? No, please answer. Oh, yeah. Well, in the way that the Barnharty court did it, I don't think he deviated too much from the Rule 12b6 standard because he was allowed to review the record, and that was exactly what he did. He reviewed his own dockets. Well, he reviewed the record that was before. He reviewed the record that was before it without the benefit of any discovery having taken place. No, I meant the record of the court. He reviews the docket, which, you know, he can pull off with CMECF. He can pull, this is this docket from 1991. This is this document from 2015. This is this one, this one, and he uses that. Yeah. But he's not relying, correct me if I'm wrong, on a submission for summary judgment from either party where you have to follow a statement of uncontested facts. You have to have, you know. Yes. And, again, I realize there are some instances a court, as a matter of law, can enter summary judgment. But without notice, you know, that's, you know, I think there's a concern about that. Yeah. Anything else? No, there's nothing more to add.  Thank you. You're welcome. Your rebuttal, then. At this time, would counsel for the appellant please reintroduce himself on the record? He has a three-minute rebuttal. Attorney González-Valentín, representation of Instituto Medico del Norte. Your Honor, I have several answers to some of Brother Counsel's assertion. First of all, Your Honor's asked if the acts of Oriental had any bearing on Gringift. Brother Counsel's, with all respect, is incorrect in law, Your Honor. The Puerto Rico Supreme Court has stated on multiple occasions that a successor in interest is bound by the actions of its predecessor. And that anyone, CTP Plaza versus Mendez Perez.  So with that said, that would allow you at least to do some discovery or at least at a minimum send the case back to figure out why exactly that was done. It might have a valid reason for what he was saying, but we just don't know. At the very least, Your Honor. But it's even worse than that. Brother Counsel said that the statement of accounts are internal accounting documents. That is incorrect. This is a statement of account. It is what any bank will provide to its clients on how its loan is being repaid and how much is owed and how it's being treated. This is not accounting documents for tax purposes or anything like that. And they clearly state that there is a portion of the credit that was not going to, that did not accrue interest. This is in 2019 when Condado 7 acquired the loan, the credit, Your Honor. And I will also refer you to the workout plan proposal, which is specifically mentioned. According to the current legal balance of two loans, the amortization schedule represents approximately 231 payments or months. And right underneath this, it wants to extend the maturity date of the loan of the $3.585 million for five years under the current terms. This is important. Under the current terms, meaning the 1991 agreements. Non-interest bearing demand note for $3.5 million. Right underneath is the proposed payment plan, which has a note that says, non-interest bearing demand note for $3.5 million with maturity date of five years from the effective date of the plan. Your Honor, it's clear that Oriental never intended and never did charge interest on that portion of the loan. And GreenGift, as a successor in interest, is bound by those agreements and those actions. In addition, Your Honor, Brother Counsel stated that there was constructive notice. There's no constructive notice, Your Honor. Even the opinion and order from the Bankruptcy Court, which, as Judge Montecago stated, is not very clear, clearly has a whole section discussing the 12B6 standard. It ruled on the 12B6 standard. It just ruled incorrectly. If there are any other questions, Your Honor? No, not for me. Judge Montecago? No, thank you. Judge Thompson? Thank you, Your Honors. A pleasure. Okay, we're going to take a recess and then for the next...